IN RE INTEREST OF KAYLE C. AND KYLEE C.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. MICHELLE C. AND DONALD Y.,
APPELLEES, AND DANNY Y. AND LOUISE Y., APPELLANTS.
574 N.W. 2d 473

Filed January 2, 1998. No. S-97-013.

James Walter Crampton for appellants.

James S. Jansen, Douglas County Attorney, and Vernon Daniels for appellee State.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

STEPHAN, J.

Danny Y. and Louise Y. (hereinafter the grandparents) appeal from an order of the separate juvenile court of Douglas County denying their motion for leave to intervene. We determine, as a matter of first impression, that grandparents of a juvenile who is the subject of a dependency proceeding have a direct legal interest in the subject matter of the action which entitles them to intervene as a matter of right, and we therefore reverse the judgment and remand the cause to the juvenile court for further proceedings.

## BACKGROUND

On November 9, 1994, the Douglas County Attorney, on behalf of the State of Nebraska, filed a petition in the separate juvenile court of Douglas County alleging that the court had jurisdiction over sisters Kayle C. and Kylee C., pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), because they lacked proper parental care by reason of the faults or habits of their mother. The State alleged that "[o]n or about November 6, 1994 said children were dropped off by their mother at the home of Barbara Ross, and since that date, [the mother's] whereabouts are unknown." The court granted the State's motion for temporary custody pending adjudication as a matter of "immediate and urgent necessity for the protection of said children" and ordered the then Nebraska Department of Social Services (DSS) to retain custody of the children for placement in foster care or other appropriate placement with DSS. On November 10, 1994, the State filed an amended petition naming Donald Y. as the father of Kayle. He was subsequently permitted to intervene in the action as the father of Kayle. The identity of the father of Kylee does not appear in the record.

After conducting a detention hearing on November 22, 1994, the juvenile court ordered the children to remain in the temporary custody of DSS. At a pretrial hearing on December 13, 1994, the children's mother appeared and admitted the allegations in the amended petition. Based on this admission, the juvenile court adjudicated the children to be within its jurisdiction pursuant to § 43-247(3)(a) and ordered them to remain in the temporary custody of DSS.

On January 19, 1995, the juvenile court held a disposition hearing and ordered the children to remain in the temporary custody of DSS while the parents took steps necessary to comply with a plan designed to correct the conditions which led to the adjudication. Review hearings were conducted on April 18 and October 17, 1995, and April 29, 1996. DSS retained custody of the children, but the parents were granted visitation.

The grandparents attended the detention and disposition hearings held by the juvenile court and are identified in the orders entered by the court following those hearings as "Grandfather" and "Grandmother." On November 19, 1996, the grandparents filed a motion for leave to intervene in which they alleged that they were the paternal grandparents of Kayle and Kylee, that they had a "stable and positive relationship" with the children, and that they wished to have custody of them. The grandparents requested that "they be granted leave to intervene so that they may present evidence in support of their allegations that custody or placement of the minor children with them would be in the best interests of the children."

At a hearing on November 26, 1996, the juvenile court denied the grandparents' motion based upon a finding that there was "no legal basis" upon which it could grant the motion. The grandparents perfected a timely appeal. Pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals, we removed this matter to our docket on our own motion.

## ASSIGNMENT OF ERROR

The grandparents contend that the juvenile court erred in holding, as a matter of law, that they had no right to intervene in this proceeding.

## SCOPE OF REVIEW

Cases arising under the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 through 43-2,129 (Reissue 1993), are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. See, *In re Interest of Borius H. et al.*, 251 Neb. 397, 558 N.W.2d 31 (1997); *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996). In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling. *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997); *In re Interest of Krystal P. et al.*, 251 Neb. 320, 557 N.W.2d 26 (1996).

## ANALYSIS

The Nebraska Juvenile Code defines "parties" as the juvenile over which the juvenile court has jurisdiction under § 43-247 and his or her parent, guardian, or custodian. § 43-245(2). The State argues that since grandparents are not included within this statutory definition, they are precluded from intervening in dependency proceedings. We do not read § 43-245(2) so narrowly. The language of the statute is not exclusive; it merely identifies necessary parties to a juvenile proceeding. See *In re E.I.*, 653 N.E.2d 503 (Ind. App. 1995).

The question of whether the grandparents have a right to intervene in this action is governed by Neb. Rev. Stat. § 25-328 (Reissue 1995), which provides:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

The interest required as a prerequisite to intervention under this statute is a direct and legal interest of such character that the

intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537 (1992); *Geer-Melkus Constr. Co., Inc. v. Hall County Museum Board*, 186 Neb. 615, 185 N.W.2d 671 (1971). A person seeking to intervene in an action must allege facts showing that he or she possesses the requisite legal interest in the subject matter of the action. See *Noble v. City of Lincoln*, 158 Neb. 457, 63 N.W.2d 475 (1954). For purposes of ruling on a motion for leave to intervene, a court must assume that the intervenor's factual allegations are true. *Basin Elec. Power Co-op v. Little Blue N.R.D.*, 219 Neb. 372, 363 N.W.2d 500 (1985).

We have not previously addressed the issue of whether the grandparents of a juvenile who is the subject of proceedings under the Nebraska Juvenile Code possess a legal interest in such proceedings sufficient to permit them to intervene as a matter of right pursuant to § 25-328 prior to final disposition. We have examined grandparents' rights in juvenile proceedings following termination of parental rights. In *In re Interest of Ditter*, 212 Neb. 855, 859, 326 N.W.2d 675, 677 (1982), we held that "once parental rights of a child have been terminated as to a natural parent, the natural parents of such parent whose rights have been terminated are not entitled to continue visitation as a matter of right." We reasoned that since the intent of terminating parental rights was to divest any tie between the parent and child so that placement with an adoptive family could occur as quickly as possible, "little purpose would be served in continuing family ties between the grandparents and the child to be adopted." *Id.* at 857, 326 N.W.2d at 676. We specifically limited our holding to the facts of the case, noting that "[h]ad termination [of parental rights] not occurred, we would be confronted with a different question which we do not now decide." *Id.* at 859, 326 N.W.2d at 677.

Relying upon *In re Interest of Ditter*, we held in *In re Interest of S.R.*, 217 Neb. 528, 352 N.W.2d 141 (1984), that grandparents who had temporary custody during dependency proceedings lacked standing to challenge an order placing the juvenile for adoption after parental rights were terminated. We stated:

The grandparents in this case have no rights beyond the rights of any foster parents utilized to take physical possession of a juvenile while the courts attempt to, first, rehabilitate the natural parents so that they may become fit parents, and, second, if that rehabilitation effort fails and the natural parents' rights are terminated, to place the child in a home where the child may be adopted and thus regain parents to aid the child in his course through life. To argue custody as against adoption is to miss the whole point of the statutes providing for termination of parental rights and then the establishment of new parents through adoption in an effort to give the abandoned child real parents. We hold that grandparents, as such, do not have standing to interfere with the process of termination of parental rights and the adoptive procedures provided by our statutes. In so holding we do not in any way say or intimate that in appropriate circumstances and after appropriate legal consents and pursuant to proper court hearings and orders grandparents may not legally adopt their grandchildren.

*Id.* at 534-35, 352 N.W.2d at 144.

Courts in other states have reached differing results in determining the right of grandparents to intervene in juvenile dependency and termination of parental rights proceedings. Some courts have held that grandparents seeking custody of their grandchildren have no direct legal interest in the determination of whether the child will be reunited with his or her natural parents or whether parental rights will be terminated, even where their visitation rights could be affected by such termination, and therefore have no right to intervene. See, e.g., *In re Ryan V.*, 46 Conn. App. 69, 698 A.2d 371 (1997); *Ruth L. v. State*, 830 S.W.2d 528 (Mo. App. 1992); *Wilson & Walker v. State*, 230 Kan. 49, 630 P.2d 1102 (1981). Other courts have recognized grandparents' right to intervene in juvenile proceedings where they have a statutory right to be considered for temporary or permanent custody. *In Interest of A.G.*, 558 N.W.2d 400 (Iowa 1997); *People, Int. of C.P.*, 34 Colo. App. 54, 524 P.2d 316 (1974). In *Bechtel v. Rose In and For Maricopa County*, 150 Ariz. 68, 722 P.2d 236 (1986), a dependency proceeding in

which the child's mother had died and his father had relinquished parental rights, the Arizona Supreme Court focused primarily upon the basic relationship between grandparents and their grandchildren in holding that the maternal grandmother should be permitted to intervene. The court stated:

> We are convinced that the best interest of a parentless child is usually served by allowing his grandparents to intervene in a dependency hearing. If a child is adjudged dependent by a juvenile court, the juvenile court acquires the power to place the child in a wide range of statutorily prescribed homes outside the family. . . . It is therefore apparent that grandparents, who are invested with a natural and abiding love for their grandchildren, should be allowed to intervene in the dependency process unless a specific showing is made that the best interest of the child would not be served thereby.

(Citations omitted.) *Id.* at 73, 722 P.2d at 241. The court concluded that "[a]lthough no explicit statutory standing to intervene is granted to grandparents *qua* grandparents, the tenor of Arizona's legislative and judicial decisions, as well as sound public policy, demands that grandparents be 'accorded this right." *Id.* at 74, 722 P.2d at 242.

We are persuaded that under Nebraska law, grandparents have a sufficient legal interest in dependency proceedings involving their biological or adopted minor grandchildren to entitle them to intervene in such proceedings prior to final disposition. In 1986, the Legislature enacted a law specifically recognizing the right of grandparents to seek visitation rights with their minor grandchild where the child's natural parents are deceased, where marriage dissolution proceedings involving the parents are pending or concluded, and where the parents of the child have never married but paternity has been legally established. See Neb. Rev. Stat. §§ 43-1801 to 43-1803 (Reissue 1993). This legislation permits a court to grant "[r]easonable rights of visitation" to grandparents

> when the court determines by clear and convincing evidence that there is, or has been, a significant beneficial relationship between the grandparent and the child, that it is in the best interests of the child that such relationship

continue, and that such visitation will not adversely interfere with the parent-child relationship. § 43-1802(2). This statutory right of grandparents to obtain court-ordered visitation upon a showing that they have a "significant beneficial relationship" with their minor grandchild demonstrates the public policy of this state to recognize and foster such relationships.

Moreover, although grandparents do not have explicit statutory standing to be heard on custody issues during the disposition phase of a dependency proceeding, we find such standing to be implicit in the juvenile code. Section 43-284 provides in pertinent part:

When any juvenile is adjudged to be under subdivision (3) of section 43-247, the court may permit such juvenile to remain in his or her own home subject to supervision or may make an order committing the juvenile to the (1) care of some suitable institution, (2) care of some reputable citizen of good moral character, (3) care of some association willing to receive the juvenile embracing in its objects the purpose of caring for or obtaining homes for such juveniles, which association shall have been accredited as provided in section 43-296, (4) care of a suitable family, or (5) care and custody of the Department of Social Services.

We have held that the liberal use of the word "may" in this statute authorizes the juvenile court "to exercise broad discretion in its disposition of children who have been found to be abused or neglected." *In re Interest of Amber G. et al.*, 250 Neb. 973, 981-82, 554 N.W.2d 142, 148 (1996). Under this statute, the juvenile court would have discretionary authority to award temporary custody to the grandparents of a juvenile upon a finding that they qualify as "reputable citizen[s] of good moral character" or "suitable family." § 43-284(2) and (4).

In this case, temporary custody was awarded to DSS, which has statutory "authority, by and with the assent of the court, to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it." § 43-285(1). DSS must file periodic reports with the court "stating the location of the juvenile's placement" and must file a report and notice of any change in placement,

which the court may review on its own motion or upon the filing of an objection by an "interested party." § 43-285(3). In addition, if the juvenile court finds that the placement selected by DSS is not in a child's best interests, the court has authority under § 43-284 to remove the child from the temporary custody of DSS and award custody to another qualified person or entity where the child's needs will be better met. See *In re Interest of G.B., M.B., and T.B.*, 227 Neb. 512, 418 N.W.2d 258 (1988). Thus, in this case, the juvenile court would have authority to remove Kayle and Kylee from the temporary custody of DSS and grant temporary custody to the grandparents if it were to find from an evidentiary showing that such a change in custody would be in the children's best interests. However, the grandparents have no means of presenting this issue to the juvenile court for determination unless they are permitted to intervene and offer evidence.

If a dependency proceeding is finally resolved by a termination of parental rights pursuant to § 43-292, the relationship between grandparent and grandchild would also be terminated under our holding in *In re Interest of Ditter*, 212 Neb. 855, 326 N.W.2d 675 (1982). This factor places grandparents in a position to realize significant loss by direct operation of judicial determinations made in a dependency proceeding. We conclude that this factor and the public policy and temporary custody considerations discussed above establish that grandparents have a direct legal interest in the subject matter of a juvenile dependency proceeding which entitles them to intervene as a matter of right under § 25-328.

The right of grandparents to intervene in a dependency proceeding which we recognize today does not confer any special entitlements or priorities upon them with respect to temporary custody, placement, or any other issue before the juvenile court. Exercising their right of intervention simply enables those grandparents wanting to keep abreast of dependency proceedings to receive notice and have an opportunity to be heard with respect to actions taken by a juvenile court which could significantly affect their relationship with their grandchildren. We view this result as consistent with the general law and public policy of this state and in furtherance of the foremost objective

of the Nebraska Juvenile Code—to promote and protect the best interests of the juvenile. See, *In re Interest of Brandy M. et al.*, 250 Neb. 510, 550 N.W.2d 17 (1996); *In re Interest of Lisa O.*, 248 Neb. 865, 540 N.W.2d 109 (1995).

For the above reasons, we conclude that the juvenile court erred in denying the grandparents' motion for leave to intervene and remand for further proceedings consistent with this opinion. To the extent that any language in our opinion in *In re Interest of S.R.*, 217 Neb. 528, 352 N.W.2d 141 (1984), is inconsistent with our holding in this case, it is specifically disapproved.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.