IN RE INTEREST OF DESTINY S., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. RANDALL S. AND
LINDA S., APPELLEES, AND DOROTHY B., APPELLANT.
639 N.W.2d 400

Filed February 22, 2002.   No. S-01-170.

David C. Mitchell, of Yost, Schafersman, Lamme, Hillis, Mitchell, Schulz & Twidwell, P.C., L.L.O., and, on brief, Catherine L. Shugrue-Schaffner, P.C., L.L.O., for appellant.

Joe Stecher, Dodge County Attorney, and Kevin J. Slimp for appellee State of Nebraska.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Dorothy B. appeals from an order of the county court for Dodge County, sitting as a juvenile court, overruling her motion for leave to intervene in a juvenile dependency proceeding to determine the final placement of her great-granddaughter, an adjudicated child, and further overruling her motion for discovery.

## BACKGROUND

Destiny S. was born on December 24, 1993. Dorothy is the child's biological maternal great-grandmother. On December 12, 1996, the Dodge County Court, sitting as a juvenile court, conducted a detention hearing and concluded that Destiny should be removed from her mother's home and placed in the temporary custody of the Nebraska Department of Social Services, now the Nebraska Department of Health and Human Services (DHHS). On January 13, 1997, the court adjudicated Destiny to be a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1996) and ordered that she remain in the temporary custody of DHHS. Upon removal from her mother's home in December 1996, Destiny resided with Dorothy at her home in Fremont, Nebraska.

On October 9, 1998, after both of her biological parents relinquished their parental rights, Destiny was adopted by Randall S. and Linda S. Destiny resided in Fremont with Randall and Linda from March 27, 1998, until May 5, 2000, when the State filed a petition alleging that Destiny was a child as defined in § 43-247(3)(a) due to physical abuse by Randall. At that time, Destiny was removed from Randall and Linda's home and placed in the temporary custody of DHHS, which placed her in the care of foster parents.

At an adjudication hearing on May 31, 2000, the court accepted relinquishments of parental rights executed by Randall and Linda, Destiny's adoptive parents. Thereupon, the court adjudicated Destiny to be a child within the meaning of § 43-247(3)(a) and directed that she remain in the custody of DHHS pending further proceedings. The court ordered DHHS to submit a permanency plan within 30 days and further directed that Dorothy be

included in planning and given notice of all further proceedings. The judge referred to Dorothy as "one person that Destiny has had as a constant in her life." Dorothy's counsel entered an appearance on June 13.

At a dispositional hearing held on July 5, 2000, DHHS filed a plan recommending that Destiny remain in its custody with a permanency goal of placement with an adoptive family. Dorothy appeared with counsel. Referring to Dorothy as "the one stable influence family connection that [Destiny has] had consistently throughout her life," the court inquired as to whether Dorothy was being considered for adoptive placement. The DHHS caseworker replied that Dorothy, as well as several other persons, was under consideration. Through counsel, Dorothy expressed her strong desire to be considered as an adoptive parent. The court approved the plan to place Destiny for adoption and continued the hearing for 60 days to permit a professional evaluation of the various adoptive placements under consideration.

Another hearing was held on August 16, 2000, to consider a request by DHHS for a change in Destiny's foster placement. The guardian ad litem recommended, on a "short term basis only," that Destiny be placed with Dorothy subject to substantial and regular visitation with other persons who were being considered as prospective foster parents. At the conclusion of the hearing, the court advised Dorothy, who was present with counsel, that Destiny would be placed with her "as a grandmother" pending future resolution of placement issues. An order approving temporary placement with Dorothy was entered on August 24. The order included a requirement of liberal visitations by other prospective adoptive parents and a requirement that neither Dorothy nor the other prospective adoptive parents discuss the issue of permanent placement with Destiny.

On January 5, 2001, another hearing was held to change Destiny's temporary placement. Based upon testimony from a caseworker who was attempting to place Destiny for adoption, the court approved the change recommended by DHHS and placed Destiny with Destiny's cousin, a prospective adoptive parent, finding that the change was in Destiny's best interests. Dorothy was given notice of all the juvenile proceedings described above and was represented by counsel at such proceedings.

On January 4, 2001, prior to the second hearing on the temporary placement change, Dorothy filed a motion for leave to intervene and a motion for discovery. In the motion to intervene, Dorothy asserted her biological relationship to Destiny and her role as Destiny's "primary caretaker" and "the only individual with whom Destiny . . . has established a meaningful bond." Dorothy further alleged that DHHS was "embarking on a course which will, if adopted by the Court, effectively eliminate [Dorothy's] role as primary caretaker as well as any rights which [Dorothy] may otherwise have as to be considered as an adoptive parent or have meaningful visitation rights." Finally, Dorothy alleged that permitting her to intervene in the juvenile proceeding would be in Destiny's best interests.

The State filed an objection to Dorothy's motion asserting that she lacked legal standing to intervene. Evidence concerning the motion was received at the January 5, 2001, temporary placement hearing. On January 12, the court entered an order overruling Dorothy's motion to intervene, as well as her motion for discovery. The court determined that Dorothy and Destiny's cousin were

parties of interest, only as it applies to their qualification to serve as placement for Destiny, and therefore, may present evidence regarding their qualifications. They are not parties of interest allowing discovery, questioning, cross-examining, or calling witnesses beyond that that is personally applicable to their qualifications for consideration of the Court.

From this order, Dorothy perfected this timely appeal, which we removed to our docket on our own motion pursuant to our authority to regulate the dockets of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Dorothy assigns that the juvenile court erred in (1) failing to recognize that she was an interested party as a matter of law as Destiny's great-grandmother, who is of good moral character and was "suitable family"; (2) failing to recognize her right to intervene as a foster parent; (3) failing to allow her to intervene as a person who stood in loco parentis to Destiny; (4) failing to recognize that she had a justiciable interest in the controversy, thus

giving her the right to intervene; (5) failing to allow her to intervene as a matter of equitable discretion; (6) failing to find that any combination of the foregoing provided a basis for intervention; (7) failing to receive evidence in support of her motion for leave to intervene; and (8) overruling her motion for discovery.

## STANDARD OF REVIEW

■ Cases arising under the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 through 43-2,129 (Reissue 1998), are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998). In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

## ANALYSIS

The Nebraska Juvenile Code defines "parties" as the juvenile over which the juvenile court has jurisdiction under § 43-247 and his or her parent, guardian, or custodian. § 43-245(11). The juvenile code contains no specific provisions governing the rights of other persons to intervene in juvenile proceedings. However, juvenile proceedings are civil in nature. See, *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989); *In re Interest of Theodore W.*, 4 Neb. App. 428, 545 N.W.2d 119 (1996). Moreover, such proceedings must be fundamentally fair. See *In re Interest of Kassara M.*, 258 Neb. 90, 601 N.W.2d 917 (1999). We therefore look to the rules governing intervention in civil proceedings as a guidepost in determining whether an individual has a right to intervene in juvenile proceedings.

■ Generally, intervention in civil actions is governed by Neb. Rev. Stat. § 25-328 (Reissue 1995), which permits intervention by one "who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both." The interest required as a prerequisite to intervention under this statute is a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered in the action. *Ruzicka v. Ruzicka*, 262 Neb. 824, 635 N.W.2d 528 (2001); *In re Interest of Kayle C. & Kylee C., supra.* One seeking to intervene in an action

must submit a petition setting forth the facts on which the intervention rests. *Ruzicka v. Ruzicka, supra*; *In re Interest of Kiana T.,* 262 Neb. 60, 628 N.W.2d 242 (2001); Neb. Rev. Stat. § 25-330 (Reissue 1995). Here, Dorothy filed a pleading styled as a "motion" alleging specific facts upon which she bases her claimed right to intervene. It appears that the parties and the juvenile court treated this document as a petition, as do we.

In *In re Interest of Kayle C. & Kylee C., supra,* we held that grandparents had an interest sufficient to permit them to intervene in juvenile proceedings where parental rights had not been terminated. This determination was based upon three factors: (1) the statutory right of grandparents to seek visitation rights with their minor grandchildren pursuant to Neb. Rev. Stat. §§ 43-1801 to 43-1803 (Reissue 1998), (2) the potential for temporary placement of the children with their grandparents pursuant to § 43-284, and (3) the potential termination of the relationship between the grandparents and the grandchildren if the juvenile proceeding resulted in termination of parental rights under the holding in *In re Interest of Ditter,* 212 Neb. 855, 326 N.W.2d 675 (1982).

The instant case, however, differs in substantial respects from *In re Interest of Kayle C. & Kylee C., supra.* Because § 43-1801 defines "grandparent" as "the biological or adoptive parent of a minor child's biological or adoptive parent," a great-grandparent would have no statutory right to seek visitation pursuant to § 43-1802. Moreover, the record in this case reflects the fact that the parental rights of Destiny's biological mother had been terminated by relinquishment before Dorothy sought to intervene. In *In re Interest of Ditter, supra,* we held that once parental rights have been terminated as to a natural parent, the natural parents of the parent whose rights have been terminated are not entitled to continue visitation with their grandchildren as a matter of right. We based this conclusion on the "generally accepted view" that

> if we are principally concerned with the best interests of the child . . . and by terminating parental rights we intend to divest any tie between the parent and child so that we may, as quickly as possible, find an adoptive family for the child and permit the child to begin anew, then little purpose

would be served in continuing family ties between the grandparents and the child to be adopted.

(Citations omitted.) *In re Interest of Ditter*, 212 Neb. at 857, 326 Neb. at 676. Applying this rationale, any interest or right which Dorothy may have had solely by virtue of her biological relationship to Destiny ceased to exist when the parental rights of the biological mother were terminated.

However, in seeking to intervene in this proceeding, Dorothy does not rely solely upon her biological relationship with Destiny, but also upon the fact that she was serving as the child's foster parent at the time her motion to intervene was filed. She also bases her claimed right to intervene upon an assertion that "she has stood in loco parentis during a majority of the upbringing of Destiny." Brief for appellant at 27.

A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000); *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000). The assumption of the relationship is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relationship. *Id.* In order to stand in loco parentis, one must assume all obligations incident to the parental relationship. *Id.* These obligations include providing support for the child and providing day-to-day care for the child. *Id.* Once the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis. *Id.* Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby. *Id.* See, also, *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998); *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 481 N.W.2d 165 (1992); *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991).

The record reflects that Destiny lived with Dorothy from December 10, 1996, until March 27, 1998, when she was placed with Randall and Linda, who eventually adopted her.

Assuming without deciding that Dorothy stood in loco parentis to Destiny during this period, the subsequent adoption clearly would have terminated such status. Following the adoptive parents' relinquishment of parental rights and the adjudication under § 43-247(3)(a) in June 2000, Destiny was temporarily placed with Dorothy under what was, at most, a short-term foster placement pending professional evaluation of prospective adoptive parents, including Dorothy. The court clearly informed Dorothy on the record that Destiny was being placed in her care "as a grandmother" and that future decisions regarding placement would be made by the court. Under these circumstances, Dorothy did not stand in loco parentis to Destiny at the time Dorothy filed her motion for leave to intervene and therefore cannot assert any direct and legal interest derived from such status as a basis for intervention.

In support of Dorothy's argument that her status as a foster parent affords the requisite interest to permit intervention, she relies upon *In re Interest of Levey*, 211 Neb. 66, 317 N.W.2d 760 (1982), and *In re Interest of Jorius G. & Cheralee G.*, 249 Neb. 892, 546 N.W.2d 796 (1996). *In re Interest of Levey* was an appeal from an order terminating the parental rights of the adjudicated juveniles' biological mother. The opinion notes that the prospective adoptive parents and current foster parents of the children had filed a petition for intervention, which was allowed by the juvenile court over the mother's objection. However, the question of whether this decision constituted error was not raised in the appeal and therefore not addressed by this court. *In re Interest of Levey*, therefore, provides little guidance and no useful precedent.

Although it does not specifically address intervention in a juvenile proceeding, *In re Jorius G. & Cheralee G.* is somewhat more helpful. In that case, DHHS filed notice of a change of foster care placement for two children who had been adjudicated under § 43-247(3)(a). The biological mother had previously entered into an "open adoption agreement" which purported to relinquish parental rights in favor of the foster parents, Dee and Leonard Brown. When DHHS sought to change placement of the children from the Browns to a relative of the children's father, the Browns appeared at the hearing and presented evidence in opposition to

the change. After reviewing the evidence, the county court held that change of placement was not in the children's best interests, and a juvenile review panel affirmed. On appeal, DHHS argued that the Browns, as foster parents, did not have standing to object to the plan to change placement.

In resolving this issue, we examined the relationship between the Nebraska Juvenile Code and the Foster Care Review Act, as then in effect. See Neb. Rev. Stat. §§ 43-1301 to 43-1318 (Reissue 1993). We noted that § 43-285(2) and (3) (Reissue 1993) permitted an "interested party" to object to a change in placement of an adjudicated juvenile and offer proof that a proposed placement plan is not in the juvenile's best interests. We then noted that the Foster Care Review Act addressed placements of neglected, dependent, or delinquent children, including children adjudicated pursuant to § 43-247(3)(a) of the juvenile code. Determining that the standing provisions of the Foster Care Review Act found in § 43-1314 could be used as an aid to determine who is an interested party under § 43-285, we held that because § 43-1314 required that foster parents be given notice and a right to participate in all court reviews pertaining to a child in foster placement, the Browns had "standing to participate in the foster care placement review as foster parents." *In re Interest of Jorius G. & Cheralee G.*, 249 Neb. at 896, 546 N.W.2d at 799. We determined that the Browns had standing for the additional reason that the biological mother had relinquished the children for adoption by them.

As it did at the time of the decision in *In re Jorius G. & Cheralee G.*, § 43-1314 currently provides that foster parents must be given notice and an opportunity to participate in court reviews pertaining to a child in foster care placement. However, in 1998, the statute was amended to add the following language: "Notice to the foster parent, preadoptive parent, or relative providing care shall not be construed to require that such foster parent, preadoptive parent, or relative be made a party to the review solely on the basis of such notice and opportunity to be heard." 1998 Neb. Laws, L.B. 1041.

Using § 43-1314 as an aid, as we did in *In re Interest of Jorius G. & Cheralee G.*, 249 Neb. 892, 546 N.W.2d 796 (1996), we conclude that a foster parent does not have an interest in the

placement of an adjudicated child sufficient to warrant intervention in juvenile proceedings as a matter of right. However, such person is entitled to notice and an opportunity to participate in all court reviews pertaining to a child in foster care placement. In the instant case, the juvenile court required that Dorothy be given notice and an opportunity to participate in future hearings regarding Destiny's placement and permanency plan. Its determination that neither Dorothy nor Destiny's cousin was a "part[y] of interest allowing discovery, questioning, cross-examining, or calling witnesses beyond that that is personally applicable to their qualifications for consideration of the Court" is consistent with the provisions of § 43-1314. Accordingly, the court did not err in denying Dorothy's motion to intervene as a party.

Finally, we consider Dorothy's contention that the district court erred in denying her motion for discovery, filed contemporaneously with her motion seeking leave to intervene. We construe the court's order discussed above as entitling Dorothy to limited discovery on matters pertaining specifically to her personal qualifications to become Destiny's adoptive parent. Dorothy's motion for discovery was not so limited, and the juvenile court therefore did not err in overruling it.

Dorothy's remaining assignment of error is that the court erred in failing to allow her to intervene as a matter of equitable discretion. We have recognized an equitable intervention procedure separate from that outlined in the statutes. *Colman v. Colman Foundation, Inc.*, 199 Neb. 263, 258 N.W.2d 128 (1977) (holding trial court may, independent of statute, allow intervention as matter of discretion); *State ex rel. City of Grand Island v. Tillman*, 174 Neb. 23, 115 N.W.2d 796 (1962) (recognizing that intervention may be allowed by court of equity in its discretion in proper case); *Department of Banking v. Stenger*, 132 Neb. 576, 272 N.W. 403 (1937) (finding that equitable intervention exists independent of statute and is in discretion of court). These cases clearly establish, however, that any right to equitable intervention is reviewed for an abuse of discretion by the lower court. On the instant facts, the juvenile court did not abuse its discretion in denying Dorothy's motion for leave to intervene, and thus, this assignment is without merit.

## CONCLUSION

For the reasons discussed herein, we conclude that the juvenile court did not err in denying Dorothy's motions for leave to intervene and for discovery. Although denying leave to intervene as a party, the court properly and correctly recognized Dorothy's right to notice and limited participation in this proceeding as a foster parent and potential adoptive parent. We therefore affirm the order of the juvenile court.

AFFIRMED.

MILLER-LERMAN, J., dissenting.

I respectfully disagree with the majority's conclusion that there was no abuse of discretion in denying Dorothy equitable intervention. I would reverse.

I agree that Dorothy does not have a "direct and legal interest" which would mandate intervention in this proceeding as a matter of right. Further, as the majority notes, Neb. Rev. Stat. § 43-1314 (Reissue 1998) was amended in 1998 to provide that "notice" such as Dorothy received shall not be construed to require that an individual receiving such notice be made a party. However, § 43-1314 does not preclude an individual who receives such notice from being made a party.

We have noted that "[t]he courts recognize two methods by which intervention may be accomplished. One is statutory and is allowed as a matter of right . . . . The other is a matter of equitable discretion . . . . This existed prior to the enactment of the statute, and still exists independent thereof." *Department of Banking v. Stenger*, 132 Neb. 576, 577, 272 N.W. 403, 404 (1937). Equitable intervention is reviewed for an abuse of discretion. See *id.*

> A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system.

*Peter v. Peter*, 262 Neb. 1017, 1022, 637 N.W.2d 865, 871 (2002).

A review of the record shows that "checkered" results have been delivered by the public systems charged with vigilance in facilitating the best interests of the parentless child involved.

See *Colman v. Colman Foundation, Inc.*, 199 Neb. 263, 266, 258 N.W.2d 128, 129 (1977) (White, J., dissenting) (referring to "checkered course" of the proceedings therein and concluding that equitable intervention should have been allowed). Indeed, the court in this case acknowledged that Dorothy has been the "one person that Destiny has had as a constant in her life." In view of prior proceedings and the unique posture of the participants in this case, I would conclude that it was an abuse of discretion not to allow equitable intervention by Dorothy.

WRIGHT and McCORMACK, JJ., join in this dissent.