## VI. CONCLUSION

The trial court did not err in removing Theodore from his positions as the personal representative and as the trustee, because his actions reveal that his interests irreconcilably conflicted with the interests of the estate and the Trust. Accordingly, the decision of the trial court is affirmed.

Affirmed.

————————————

In re Interest of Sarah H., a child under 18 years of age.
State of Nebraska, appellee, v. Alicia F., appellant,
and Brian H., intervenor-appellee.

___ N.W.2d ___

Filed October 22, 2013.    No. A-12-1197.

1. **Juvenile Courts: Judgments: Appeal and Error.** Cases arising under the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 through 43-2,129 (Reissue 2008 & Cum. Supp. 2012), are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Juvenile Courts: Appeal and Error.** In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's rulings.

3. **Juvenile Courts: Jurisdiction: Words and Phrases.** The Nebraska Juvenile Code defines "parties" as the juvenile over which the juvenile court has jurisdiction under Neb. Rev. Stat. § 43-247 (Reissue 2008) and his or her parent, guardian, or custodian.

4. **Interventions: Pleadings.** Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

5. **Interventions.** Neb. Rev. Stat. § 25-328 (Reissue 2008) provides a right to intervene before trial has commenced.

6. **Interventions: Time.** A right to intervene should be asserted within a reasonable time, and the applicant must be diligent and not guilty of unreasonable delay after knowledge of the suit.

7. **Judgments: Interventions: Trial: Time.** An intervenor may not unreasonably delay the original parties, unduly retard the trial of the case, or render nugatory a judgment without a compelling cause, and persons who otherwise would be granted leave to intervene are denied consideration where they sit by and allow litigation to proceed without timely requesting leave to enter the case.

8. **Interventions.** The language of Neb. Rev. Stat. § 25-328 (Reissue 2008) does not absolutely bar an otherwise entitled applicant from seeking to intervene after trial has commenced.

9. **Interventions: Juvenile Courts.** Intervention may be proper after the adjudication in a juvenile proceeding.

10. **Paternity: Presumptions.** In Nebraska, a child born during wedlock is presumed to be the legitimate offspring of the married parties.

11. **Paternity: Presumptions: Proof.** The presumption of legitimacy is not an irrebuttable presumption, and it may be rebutted by clear, satisfactory, and convincing evidence.

12. ____: ____: ____. Blood tests may be used to rebut the presumption that the husband is the biological father of children born during wedlock.

13. **Divorce: Paternity: Child Support: Res Judicata.** When a dissolution decree includes an order of child support, the issue of paternity is considered adjudicated and the issue of paternity cannot be relitigated between the parties because of the doctrine of res judicata, absent certain limited circumstances.

14. **Paternity: Child Support.** Neb. Rev. Stat. § 43-1412.01 (Reissue 2008) provides a means to set aside an otherwise final legal determination of paternity, including an obligation to pay child support.

15. **Paternity: Evidence: Res Judicata.** Neb. Rev. Stat. § 43-1412.01 (Reissue 2008) overrides res judicata principles and allows, in limited circumstances, an adjudicated father to disestablish a prior, final paternity determination based on genetic evidence that the adjudicated father is not the biological father.

16. **Parent and Child.** In the absence of a biological or adoptive relationship between a husband and his wife's child, certain rights and responsibilities may arise where a husband elects to stand in loco parentis to his wife's child.

17. **Parent and Child: Intent: Proof: Words and Phrases.** A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful parent. The assumption of the relation is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation.

18. **Parent and Child.** It is a husband's desire to remain in an in loco parentis relationship with his wife's child that gives rise to the rights and corresponding responsibilities usually reserved for natural or adoptive parents.

19. ____. Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby.

Appeal from the Separate Juvenile Court of Lancaster County: LINDA S. PORTER, Judge. Affirmed.

Joseph E. Dalton, of Dalton Law Office, P.C., L.L.O., for appellant.

Michael A. Greenlee, of Law Office of Michael Greenlee, for intervenor-appellee.

Inbody, Chief Judge, and Irwin and Riedmann, Judges.

Irwin, Judge.

## I. INTRODUCTION

Alicia F. appeals an order of the separate juvenile court of Lancaster County, Nebraska, in which the juvenile court granted a petition to intervene filed by Brian H. and ordered placement of a juvenile, Sarah H., with Brian. We find no merit to Alicia's assertions on appeal, and we affirm.

## II. BACKGROUND

Alicia and Brian began dating in September 1994 and were married in June 1995. Sarah was born in July 1995, and Brian was listed as Sarah's father on her birth certificate. Alicia and Brian were divorced in 1997.

Brian was ordered to pay child support to Alicia, and he was granted visitation rights with Sarah. The record suggests that Alicia and Brian had disagreements concerning visitation on more than one occasion, and the two participated in mediation on at least two occasions.

Sometime during mediation in 2004 or 2005, Alicia revealed that Brian was not Sarah's biological father. It appears that Brian continued to be obligated to pay child support and continued to enjoy visitation rights. During a second mediation, in 2009, Alicia again raised the issue of paternity, and Brian agreed to participate in voluntary genetic testing. The voluntary genetic testing revealed a 0-percent possibility that Brian was Sarah's biological father. At that point in time, Sarah was 14 years of age.

The record presented to us is conflicting concerning Brian's potential knowledge that he was not Sarah's biological father. The Department of Health and Human Services (DHHS) report filed in this case indicates that Alicia had been in a "bad

relationship" prior to her dating Brian, that she had told Brian she had been raped, that Brian "could tell that Alicia was pregnant from the beginning," and that "he always knew" she was pregnant. The DHHS report, however, also indicates that Brian told the caseworker that he had "always [been] under the impression that Sarah was his daughter." Brian also testified that Alicia had always held out that Brian was Sarah's biological father until she first raised the issue in September 2010, approximately 13 years after the parties' marriage was dissolved.

In January 2011, the district court that had jurisdiction over Alicia and Brian's marital dissolution entered a temporary order suspending Brian's child support obligation and parenting time with Sarah. The temporary order was specifically captioned as "temporary" and was entered pending a scheduled trial to be held later in January. The record presented to us does not indicate that any further action ever occurred in the district court, and there is no evidence to indicate that any parental rights Brian may have possessed were ever formally terminated or relinquished.

Brian testified that after the temporary order was entered, he did not have "any physical contact" with Sarah until July 2012, but that he did continue to maintain verbal contact with her.

In July 2012, the State filed a petition in the juvenile court, alleging that Sarah and three other juveniles were within the jurisdiction of the court because of the fault or habits of Alicia and her husband, Frederick F. The State alleged that Frederick had engaged in sexual touching of Sarah and that all four juveniles were in danger. The State also filed a motion for emergency custody, alleging that all four juveniles were seriously endangered. The court entered an ex parte order granting temporary custody of all four children to DHHS. At that point in time, Sarah was 17 years of age.

The record presented to us on appeal includes two different placement orders, both file stamped on the same date, which appear to conflict concerning placement of the four juveniles. One order, dated 4 days before the other, suggests that the other

three juveniles were being placed with Alicia and Frederick; the other order, however, suggests that all four juveniles were to be placed in out-of-home placements. In any event, DHHS placed Sarah in Brian's home.

The State filed an amended petition concerning Sarah, in which the State amended its assertions to indicate that Sarah was within the jurisdiction of the juvenile court through no fault of Alicia and Frederick. In the amended petition, the State indicated that the allegations that Frederick had engaged in sexual touching could not be proven.

In September 2012, an adjudication hearing was held and Alicia and Frederick entered no contest pleas to the assertion that Sarah was within the jurisdiction of the juvenile court. The adjudication order entered by the juvenile court indicates that Brian appeared at the adjudication hearing. The adjudication order indicated that a disposition hearing would be held on November 6.

On November 1, 2012, Brian filed a petition to intervene in the juvenile court proceedings. Brian alleged that he was Sarah's father, that his name appeared on her birth certificate, that she was born during Brian's marriage to Alicia, that he had a fundamental interest in the care and raising of Sarah, and that there had been no allegations made concerning himself.

The juvenile court conducted a hearing at which it considered both Brian's petition to intervene and the appropriate placement and disposition for Sarah. Concerning the petition to intervene, Brian testified that Sarah was born during Brian's marriage to Alicia, that his name appears on Sarah's birth certificate, that he parented Sarah and had a lasting relationship with her, and that Sarah was, at that time, placed in his home. He acknowledged that the voluntary genetic testing had demonstrated he was not Sarah's biological father and that a temporary order had been entered by the district court temporarily suspending his obligation to pay support and his rights to visitation, but he also testified that he had maintained verbal contact with Sarah since that temporary order was entered. The court sustained the petition to intervene, finding

that Brian had acted in the role of father to Sarah for a significant part of her life.

Concerning the appropriate placement and disposition for Sarah, the State presented evidence which included a report and live testimony from a DHHS caseworker and a report from a guardian ad litem. The caseworker testified that the State was not spending any money on Sarah's placement with Brian and that Brian, his mother, and Sarah herself paid for Sarah's needs. The caseworker testified that Sarah was enrolled in college and was working full time. The caseworker testified that Sarah wanted to remain placed with Brian or to live on her own and that Sarah did not want visitation with Alicia. The State's recommendation was that Sarah remain placed with Brian.

Alicia testified that she did not agree with the recommendation for Sarah to remain placed with Brian. Alicia alleged that the placement was not safe and that Brian had been abusive and was unable to support himself. She expressed concern that Sarah had obtained a vehicle since being placed with Brian and that Sarah had gone to a doctor for "things that she's never been sick with before." Alicia testified that she would prefer Sarah be placed with a relative in the State of Georgia or be placed in an apartment on her own, rather than remaining placed with Brian.

At the conclusion of the hearing, the juvenile court noted that there were "a lot of holes" in the evidence concerning what was going on with Sarah and concluded that she should continue to be placed with Brian. The court ultimately entered a disposition order, in which the court indicated that Brian was being allowed to intervene, indicated that Sarah's placement would remain with Brian, and set forth other disposition findings concerning therapy and services for Sarah that are not relevant to the appeal. Alicia appeals from that order.

### III. ASSIGNMENTS OF ERROR

On appeal, Alicia has assigned two errors. First, she asserts that the juvenile court erred in allowing Brian to intervene. Second, she asserts that the court erred in continuing Sarah's placement with Brian.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

[1,2] Cases arising under the Nebraska Juvenile Code, Neb. Rev. Stat. §§ 43-245 through 43-2,129 (Reissue 2008 & Cum. Supp. 2012), are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013). In reviewing questions of law arising under the Nebraska Juvenile Code, an appellate court reaches conclusions independent of the lower court's rulings. *In re Interest of Candice H.*, 284 Neb. 935, 824 N.W.2d 34 (2012).

### 2. PETITION TO INTERVENE

Alicia first assigns error to the juvenile court's granting of Brian's petition to intervene. She challenges both the timeliness of Brian's petition to intervene and the sufficiency of his legal interest in the proceedings to warrant granting intervention. We find that the petition was not untimely and that the juvenile court did not err in concluding that Brian had a sufficient interest to grant intervention.

[3] The Nebraska Juvenile Code defines "parties" as the juvenile over which the juvenile court has jurisdiction under § 43-247 and his or her parent, guardian, or custodian. § 43-245(12). The language of the statute, however, is not exclusive; it merely identifies necessary parties to a juvenile proceeding. *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998).

[4] The question of whether Brian has a right to intervene in this action is governed by Neb. Rev. Stat. § 25-328 (Reissue 2008), which provides:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons

or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences.

### (a) Timeliness of Petition
### to Intervene

Alicia first asserts that this statutory language renders Brian's petition to intervene untimely and that, as a result, it should be barred. She argues that the statutory language indicates the right to intervene must be exercised "before the trial commences" and that because Brian did not file his petition to intervene until after the adjudication hearing and adjudication order, it was untimely. Brief for appellant at 8. We disagree.

[5-7] In civil proceedings, the Nebraska Supreme Court has long recognized that § 25-328 provides a right to intervene before trial has commenced. See, *Pribil v. French*, 179 Neb. 602, 139 N.W.2d 356 (1966) (right to intervene may be exercised any time before trial commences); *Lincoln Bonding & Ins. Co. v. Barrett*, 179 Neb. 367, 138 N.W.2d 462 (1965) (petition in intervention may be filed as matter of right before trial). The court has noted that a right to intervene should be asserted within a reasonable time and that the applicant must be diligent and not guilty of unreasonable delay after knowledge of the suit. *Lincoln Bonding & Ins. Co. v. Barrett, supra*. An intervenor may not unreasonably delay the original parties, unduly retard the trial of the case, or render nugatory a judgment without a compelling cause, and persons who otherwise would be granted leave to intervene are denied consideration where they sit by and allow litigation to proceed without timely requesting leave to enter the case. *Id*.

[8,9] Nonetheless, the Nebraska Supreme Court has also long recognized that the language of § 25-328 does not absolutely bar an otherwise entitled applicant from seeking to intervene after trial has commenced. See, *State ex rel. City of Grand Island v. Tillman*, 174 Neb. 23, 115 N.W.2d 796 (1962)

(intervention under statute is matter of right but does not prevent court of equity from allowing intervention after trial has begun); *County of Nance v. Thomas*, 146 Neb. 640, 20 N.W.2d 925 (1945) (party intervened in tax foreclosure proceeding after judgment of foreclosure but prior to confirmation of judicial sale); *Conkey v. Knudsen*, 143 Neb. 5, 8 N.W.2d 538 (1943) (trial court has discretion to allow intervention after commencement of trial). Most pertinent to the present proceeding, however, is that the Nebraska Supreme Court has recognized that intervention may be proper after the adjudication in a juvenile proceeding. See *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998).

In *In re Interest of Kayle C. & Kylee C., supra*, a petition was filed in the juvenile court in November 1994 concerning two sisters. The juvenile court adjudicated that it had jurisdiction over the sisters in December, and held disposition hearings and entered disposition orders throughout 1995 and 1996. In November 1996, nearly 2 years after adjudication and after a number of other disposition hearings and orders, the sisters' grandparents filed a motion for leave to intervene in the proceedings. The juvenile court denied the motion.

On appeal, the Nebraska Supreme Court discussed at length the legal sufficiency of the grandparents' interest in the litigation to support a claim of intervention. After finding the legal interest sufficient, the court specifically held that "under Nebraska law, grandparents have a sufficient legal interest in dependency proceedings involving their biological or adopted minor grandchildren *to entitle them to intervene in such proceedings prior to final disposition*." *Id*. at 691, 574 N.W.2d at 477 (emphasis supplied). The Supreme Court reversed the juvenile court's denial of the motion to intervene which was filed nearly 2 years after adjudication.

In the present case, Brian did not unreasonably delay the proceedings and did not sit by and allow litigation to proceed without timely seeking to intervene. Adjudication occurred in October 2012, and Brian filed his petition to intervene less than 1 month later, prior to the first disposition and placement hearing. He acted diligently and asserted his rights in

a timely fashion. The juvenile court did not err in rejecting Alicia's assertion that the petition to intervene should be barred as untimely.

### (b) Sufficiency of Legal Interest
### for Intervention

Alicia next asserts that the juvenile court erred in granting Brian's petition to intervene because he is not Sarah's biological father, is not Sarah's stepfather, and did not enjoy a relationship in loco parentis to Sarah. We do not find error in the juvenile court's conclusion that Brian possessed a sufficient legal interest to intervene.

[10-12] In Nebraska, a child born during wedlock is presumed to be the legitimate offspring of the married parties. *Quintela v. Quintela*, 4 Neb. App. 396, 544 N.W.2d 111 (1996). The presumption of legitimacy is not an irrebuttable presumption, however, and it may be rebutted by clear, satisfactory, and convincing evidence. *Id*. Blood tests may be used to rebut the presumption that the husband is the biological father of children born during wedlock. *Id*.

[13] The Nebraska Supreme Court has held that when a dissolution decree includes an order of child support, the issue of paternity is considered adjudicated and the issue of paternity cannot be relitigated between the parties because of the doctrine of res judicata, absent certain limited circumstances. *Devaux v. Devaux*, 245 Neb. 611, 514 N.W.2d 640 (1994) (superseded by statute on other grounds as stated in *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012)). The court noted as a matter of policy that there is no more forceful example of the rationale underlying the doctrine of finality of judgments than the potential chaos and humiliation that would follow from allowing persons to challenge, long after a final judgment, the legitimacy of children born during their marriages. *Alisha C. v. Jeremy C., supra*; *Devaux v. Devaux, supra*.

[14,15] Subsequent to the court's decision in *Devaux v. Devaux, supra*, the Legislature passed 2008 Neb. Laws, L.B. 1014, and Neb. Rev. Stat. § 43-1412.01 (Reissue 2008), derived from that bill, provides a means to set aside an

otherwise final legal determination of paternity, including an obligation to pay child support. *Alisha C. v. Jeremy C., supra*. The Nebraska Supreme Court has concluded that § 43-1412.01 clearly overrides res judicata principles and allows, in limited circumstances, an adjudicated father to disestablish a prior, final paternity determination based on genetic evidence that the adjudicated father is not the biological father. *Alisha C. v. Jeremy C., supra*.

In the present case, Sarah was born during Brian's marriage to Alicia. As such, Sarah was initially presumed to be the legitimate offspring of Brian and Alicia. When Brian and Alicia were divorced, Brian was ordered to pay child support and was granted parenting time with Sarah. The issue of paternity was first raised, by Alicia, more than 13 years later. A blood test demonstrated that Brian is not the biological father, but the record before us does not demonstrate that his parental rights or responsibilities were ever finally terminated or relinquished; although a temporary order suspending support and parenting time was entered in the district court, the record before us does not indicate that a further hearing or final order was ever entered. On the record presented to us, it is not clear whether Brian's paternity was disestablished, consistent with § 43-1412.01 or *Alisha C. v. Jeremy C., supra*.

The juvenile court, in sustaining the motion to intervene, indicated that it believed there had been a clear showing that Brian possessed an interest as a legal parent "under the doctrine of parens patriae." The court found that Brian had acted "in the role of a parent for at least a significant part of [Sarah's] life."

[16,17] In the absence of a biological or adoptive relationship between a husband and his wife's child, Nebraska appellate courts have recognized that certain rights and responsibilities may arise where a husband elects to stand in loco parentis to his wife's child. *Quintela v. Quintela*, 4 Neb. App. 396, 544 N.W.2d 111 (1996). A person standing in loco parentis to a child is one who has put himself or herself in the situation of a lawful parent by assuming the obligations incident to the parental relationship, without going through the formalities necessary to a legal adoption, and the rights, duties, and liabilities of such person are the same as those of the lawful

parent. *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002); *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991); *Quintela v. Quintela, supra*. The assumption of the relation is a question of intention, which may be shown by the acts and declarations of the person alleged to stand in that relation. *Hickenbottom v. Hickenbottom, supra*; *Quintela v. Quintela, supra*.

[18,19] It is a husband's desire to remain in an in loco parentis relationship with his wife's child that gives rise to the rights and corresponding responsibilities usually reserved for natural or adoptive parents. *In re Interest of Destiny S., supra*; *Quintela v. Quintela, supra*. See *Cavanaugh v. deBaudiniere*, 1 Neb. App. 204, 493 N.W.2d 197 (1992) (case remanded for determination of ex-husband's desire to continue in loco parentis relationship with ex-stepchild). As a corollary, termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby. *Quintela v. Quintela, supra*. See, e.g., *Cavanaugh v. deBaudiniere, supra*; *Jackson v. Jackson*, 278 A.2d 114 (D.C. 1971) (trial court erred in ordering support when husband demonstrated intent to end in loco parentis relationship).

When Sarah was born, Brian and Alicia were married. Brian's name appears on Sarah's birth certificate. Brian and Alicia remained married until Sarah was approximately 2 years of age, and at the time of dissolution of the marriage, Brian was ordered to pay child support and granted parenting time. No issue of paternity was raised for approximately 13 years, until Alicia raised the issue in the course of mediation concerning Brian's parenting time. Then a temporary order was entered by the district court suspending support and parenting time, but the record before us does not indicate any final resolution of those matters and does not reveal that Brian took any steps to relinquish or have his parental rights terminated or to evince an intent to cease acting as Sarah's legal parent. The record does not establish that his paternity was disestablished. See, § 43-1412.01; *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

From the time the temporary order was entered in January 2011 until DHHS placed Sarah with Brian in July 2012, Brian

did not have physical contact with Sarah. He testified, however, that he did maintain verbal contact and that he maintained a lasting relationship with her. From July 2012 through the time of the hearing on Brian's petition to intervene in November, Sarah was in Brian's home and care.

In *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002), the Nebraska Supreme Court noted that once the person alleged to be in loco parentis no longer discharges all duties incident to the parental relationship, the person is no longer in loco parentis. Termination of the in loco parentis relationship also terminates the corresponding rights and responsibilities afforded thereby. *Id.*

In *In re Interest of Destiny S., supra*, the juvenile's biological maternal great-grandmother sought to intervene in juvenile proceedings in 2001. The juvenile's biological parents had relinquished their parental rights in 1998, and the juvenile had been adopted by another couple. In 2000, the State filed a petition alleging physical abuse of the juvenile by the adoptive father, and the adoptive parents subsequently also relinquished their parental rights. While DHHS explored potential adoptive placements for the juvenile, the juvenile was placed in her great-grandmother's care on a short-term basis pending future resolution of placement issues. The Nebraska Supreme Court determined that this placement did not give rise to in loco parentis status, emphasizing that it was clear the placement was intended to be a short-term foster placement pending professional evaluation of prospective adoptive parents and that the court had clearly informed the great-grandmother on the record of such. *Id.*

In the present case, Brian undoubtedly enjoyed in loco parentis status for the first 15 years of Sarah's life. She was born while Brian was married to Alicia, his name appears on her birth certificate, and it does not appear that any issue concerning paternity was raised until approximately 13 years after Brian and Alicia's divorce. The record indicates that Brian represented to the caseworker in this case that Alicia had represented that he was the biological father until she raised the issue in 2010. The parties' dissolution decree obligated him to pay child support and granted him parenting time, and the

record does not reflect that he has ever demonstrated any intent or desire to cease acting as a parent.

In July 2012, when she was 17 years of age, Sarah was placed in Brian's care by DHHS. She was in his care through the time of the hearing on Brian's petition to intervene in November. The evidence adduced at the hearing indicated that the State was not providing any financial assistance to Brian for any of Sarah's needs during that time. Instead, Brian, his mother, and Sarah herself were providing all necessary financial support. Unlike the factual situation in *In re Interest of Destiny S., supra*, the State in the present case was recommending that Sarah continue to be placed with Brian; the guardian ad litem concurred with this recommendation, and the record indicates that Sarah—who was 17 years of age at the time, and is 18 years of age now—desired to continue in the placement with Brian.

On the narrow facts of this case, where Sarah was born during Brian's marriage to Alicia, Brian was held out to be her biological father for the first 15 years of her life, and DHHS had placed Sarah with Brian for several months prior to the intervention hearing and was recommending continued placement with Brian for the foreseeable future, we do not find reversible error in the juvenile court's determination that Brian possessed a sufficient interest to be entitled to intervene in the proceedings. We find this assignment of error to lack merit.

### 3. Placement

Alicia next asserts that the juvenile court erred in placing Sarah with Brian. We disagree.

Alicia relies on Neb. Rev. Stat. § 71-1902 (Cum. Supp. 2012), which provides that "no person shall furnish or offer to furnish foster care for one or more children not related to such person by blood, marriage, or adoption without having in full force and effect a written license" to provide foster care. She asserts that Brian is not related to Sarah by blood, marriage, or adoption and that he does not possess a license to provide foster care.

The present case, however, does not present a typical foster care situation. As discussed above, Brian was Sarah's legal father for at least the first 15 years of her life as a result of Sarah's being born during the marriage and the issue of paternity never being raised by anyone. He has also stood in loco parentis to Sarah for the vast majority of her life. The placement with Brian, under the facts of this case, was not a foster care placement as contemplated by § 71-1902.

The evidence adduced in this case supported a determination by the juvenile court that Brian's home was an appropriate placement for Sarah. At the time of the hearing on placement, Sarah was 17 years of age, was enrolled in college full time, and was also employed full time. The State determined that Brian's home was a safe placement, and Sarah was doing well in it.

We find no merit to Alicia's assertion that "it is a scary proposition to allow ex husbands/wives who were stepparents to be allowed to care for a child who is not theirs and make the day to day decisions for that minor child." Brief for appellant at 14. Brian is not simply an ex-husband who was a stepparent and is caring for a child who is not his. He was and acted as the legal parent for at least 15 years and has stood in loco parentis.

The State recommended continuing placement with Brian. The guardian ad litem concurred with this recommendation. Alicia testified that her preference would be for Sarah to be placed with a relative in the State of Georgia or to be placed in an independent living situation in an apartment of her own. Based on the record presented to us, we do not find any reversible error in the juvenile court's determination that continuing Sarah's placement with Brian is in her best interests. We find no merit to Alicia's assertions to the contrary.

## V. CONCLUSION

We find no reversible error concerning the juvenile court's granting of Brian's petition to intervene or the court's placement of Sarah with Brian. We affirm.

Affirmed.