Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/01/2021 09:09 AM CDT

- 922 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
29 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

IN RE INTEREST OF ARTAMIS G. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,
v. KRYSTA G., APPELLEE AND CROSS-APPELLANT,
AND LARRY M., APPELLANT AND
CROSS-APPELLEE.

___ N.W.2d ___

Filed June 1, 2021.    No. A-20-653.

1.  **Interventions.** Whether a party has the right to intervene in a proceed-
    ing is a question of law.
2.  **Judgments: Appeal and Error.** When reviewing questions of law, an
    appellate court has an obligation to resolve the questions independently
    of the conclusions reached by the trial court.
3.  **Juvenile Courts: Appeal and Error.** An appellate court reviews juve-
    nile cases de novo on the record and reaches its conclusions indepen-
    dently of the juvenile court's findings.
4.  **Interventions.** As a prerequisite to intervention under Neb. Rev. Stat.
    § 25-328 (Reissue 2016), the intervenor must have a direct and legal
    interest of such character that the intervenor will lose or gain by the
    direct operation and legal effect of the judgment which may be rendered
    by the action.
5.  **Interventions: Pleadings.** A person seeking to intervene must allege
    facts showing that he or she possesses the requisite legal interest in the
    subject matter of the action.
6.  **Parental Rights: Interventions.** Grandparents have a sufficient legal
    interest in dependency proceedings involving their biological or adopted
    minor grandchildren to entitle them to intervene in such proceedings
    prior to final disposition.
7.  **Juvenile Courts: Parental Rights: Proof.** For a juvenile court to ter-
    minate parental rights, it must find that one or more of the statutory

- 923 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

grounds listed in Neb. Rev. Stat. § 43-292 (Reissue 2016) have been satisfied and that such termination is in the child's best interest.

8. **Constitutional Law: Parental Rights: Proof.** A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit.

9. **Constitutional Law: Parental Rights: Words and Phrases.** In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being.

10. **Parental Rights: Parent and Child.** In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child.

11. **Parental Rights: Appeal and Error.** In cases where termination of parental rights is based solely on Neb. Rev. Stat. § 43-292(7) (Reissue 2016), appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is, in fact, in the child's best interests.

12. **Parental Rights.** Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of parental rights.

13. \_\_\_\_. Children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity.

Appeal from the Separate Juvenile Court of Douglas County: Amy N. Schuchman, Judge. Affirmed.

Andrea Finegan McChesney, of McChesney Family Law Omaha, for appellant.

Mark Hanna, Deputy Douglas County Attorney, and Rachel Lowe, Senior Certified Law Student, for appellee State of Nebraska.

William R. Harris, of Berry Law Firm, for appellee Krysta G.

Anne E. Troia, P.C., L.L.O., guardian ad litem.

Moore, Riedmann, and Bishop, Judges.

- 924 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

Riedmann, Judge.

## I. INTRODUCTION

Larry M. asserts he is the grandfather of Krysta G.'s six children. He appeals the order of the separate juvenile court of Douglas County denying his complaint to intervene in proceedings to terminate Krysta's parental rights to the children.

Krysta cross-appeals the order of the juvenile court terminating her parental rights under Neb. Rev. Stat. § 43-292(1), (2), and (5) through (7) (Reissue 2016).

For the reasons set out below, we affirm.

## II. BACKGROUND

Krysta is the mother of Auburn G. (born 2007), Mollie G. (born 2008), Esme G. (born 2010), Artamis G. (born 2012), Persphyne G. (born 2014), and Athena G. (born 2016). In February 2017, law enforcement received a Child Protective Services report regarding child abuse. The report indicated that Krysta's eldest child reported Krysta had kicked her and hit her with a back scratcher. Upon examining the child at her elementary school, the officer noticed a scratch on her ear. The child stated that she kicked Krysta while being disciplined and that Krysta returned a kick to the child's ear, causing her to bleed. The officer then went to Krysta's home, where Krysta explained that the scratch likely came from Krysta's fingernail when disciplining the child.

Upon seeing the home, the officer relayed concerns about its condition. The officer stated it was difficult to move about the home due to so many items covering the floors. The house had cockroaches throughout, as well as a strong odor of cat urine. The home contained four cats, and there were cat feces and cat litter on the floor and covering the stairs. All the cabinets were locked, and there were only five items in the refrigerator. There was one heater for the entire residence, and it was located in the master bedroom. There were no towels for bathing, and there was one bottle of shampoo. Two adults and

- 925 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

six children were living in the three-bedroom house. Huey M., the father of three of the children, did not appear to reside in Krysta's home and refused to take custody of the children when asked by police.

Krysta was originally charged with six counts of caretaker neglect on March 17, 2017, in the county court for Douglas County. Through a plea agreement, Krysta pled no contest to and was convicted of one count of caretaker neglect. She was sentenced to 18 months' probation. Krysta repeatedly violated the terms of her probation, including testing positive for marijuana use a total of 14 times.

A petition seeking to adjudicate the children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) was filed in February 2017. The six minor children were removed from Krysta's care due to the home's unsanitary conditions. Krysta was ordered to attend all supervised visits with her children, undergo random drug testing, participate in outpatient programming, participate in counseling for substance abuse and mental health issues, undergo a psychiatric evaluation, take all medications as prescribed, obtain adequate housing, and participate in parenting classes, among other directives.

In January 2018, the court entered an ex parte order suspending Krysta's visitations for four of the children due to the visitations' inconsistencies, Krysta's improper parenting skills, concerns of Krysta's drug use, and the potential trauma for the eldest child per her therapist. Visits resumed in February. In March, Krysta's home was deemed appropriate for visitations. However, at the end of March, another order was filed to suspend visitations as to four of the children due to Krysta's threats, yelling, and use of profanity outside of the office of one of the children's therapists. Supervised visitations resumed in May.

### 1. Termination of Parental Rights

On July 19, 2018, the State filed a motion to terminate Krysta's parental rights under § 43-292(2) and (5) through

- 926 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

(7). Visitations were suspended as to four of the children again in October, because Krysta had grabbed a knife out of anger at one visit and continued to test positive for marijuana. Supervised visits resumed again in November. In February 2019, the court ordered no visitation between Krysta and the children, per the recommendation of the children's therapist.

On July 7, 2020, the State filed an amended motion to terminate Krysta's parental rights under § 43-292(1), (2), and (5) through (7). A hearing on the termination of Krysta's parental rights was held on July 10, 14, and 15. At the hearing, the family's caseworker testified that all six children had been out of the home for more than 15 of the past 22 months, as they were all removed in February 2017 and never returned to live with Krysta.

Mollie was diagnosed by her therapist with disruptive mood dysregulation disorder and post-traumatic stress disorder. Amber Jarzynka-Schmigel has been Mollie's therapist since May 2019. Mollie had told her therapist that Krysta had hit her with a hanger occasionally and that Huey, the father of three of the children, had sexually abused her while in the home. Jarzynka-Schmigel testified that Mollie "expresses extensive anger regarding her mother not providing for her, not taking care of her, not loving her." Jarzynka-Schmigel testified that Mollie "was doing a wonderful job functioning," "managing her emotions," and "utilizing coping skills" after starting therapy until December 2019, when she "took a nosedive" and began running away from her foster home, having "emotional outbursts," and having difficulty talking about past trauma. Mollie's behavior had changed because her oldest sister had moved to Texas, but her behaviors had started to improve again. Mollie told Jarzynka-Schmigel she wished to remain with her foster family. Jarzynka-Schmigel testified it was not in Mollie's best interests to have any contact with Krysta.

The foster parent of Artamis, Persphyne, and Athena testified that those three children had been in her care since February 2017. At the time of the termination hearing, Esme

- 927 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

was also with them on a 10-day respite. According to the foster parent, Artamis was in therapy twice per week for 2½ years and was banging her head as a coping mechanism, but she had improved and stopped that coping mechanism. She now just does therapy "check-ins." Persphyne had a speech delay and had been attending speech therapy for "apraxia and VPI" and had surgery to correct them in November 2019. She attended 1 year of behavioral therapy, has discontinued that, and is now only in family therapy. Athena entered foster care at approximately 3 months of age and had not needed therapy. In February 2018, during a therapy session between Artamis and Krysta, Krysta threatened to burn down the three girls' foster parents' house and "blow up" the therapist's office, leading the therapist to call the police. Krysta has had no contact with these three children since February 2018.

Kerrie Wellman, Esme's cognitive behavioral therapist since September 2019, works with Esme "identifying feelings, relaxation techniques, coping skills, educational trauma and trauma narratives," with the ultimate goal of addressing trauma. Wellman testified this trauma stems from Esme's interactions with Krysta. Esme told Wellman her memories of Krysta "hitting her and her sisters with a metal hanger" and that "[c]onsequences in the home would consist of [Esme's] being sent outside in snow with not proper wear, without coats, socks, shoes, and things like that." Early in her treatment, Esme struggled with identifying feelings and hoarding food because "she was not in a stable and structured environment" and due to living in a neglectful environment when living with Krysta. Esme stated to Wellman that she "wants to live with a family in a loving environment" and realizes that Krysta cannot provide her with that.

Regarding Krysta's behavior, the family's caseworker testified that Krysta self-reported using marijuana for the purpose of self-medicating and takes prescription medication for cysts on her ovaries and back pain. The court had ordered Krysta to seek "therapy, a legal source of income, housing, abstaining

- 928 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

from the use of drugs and alcohol." Krysta did not obtain a legal source of income and had been ordered to complete a psychological evaluation by the court and did so but neither attended nor completed therapy. Krysta has been diagnosed with depression, anxiety, and bipolar disorder.

Amy Sissel, a family permanency specialist from October 2017 to April 2019, testified that contact with Krysta was "[s]poradic." Sissel never received proof of legal income from Krysta. Sissel stated that although Krysta never participated in any parenting assessment, she did participate in outpatient therapy but stopped attending because she had a warrant for her arrest and was fearful of the warrant. Sissel believes Krysta repeatedly neglected and refused to provide her children with necessary parental care and protection. Krysta was not complying with her required medication management routine after being diagnosed with bipolar disorder and attention deficit hyperactivity disorder. Krysta also did not consistently comply with the court's order for urinary analysis. Krysta was discharged from two different treatment centers for testing positive for alcohol or drugs a total of three times.

Dr. Elizabeth Morell, a clinical psychologist, performed psychological and parenting assessments in July 2018. Morell diagnosed Krysta with bipolar disorder, attention deficit hyperactivity disorder with generalized anxiety disorder, and borderline intellectual functioning. Her mental illness was considered "chronic and severe," would continue for an indeterminate period, and made her unable to discharge her parental responsibilities. Morell testified that Krysta's symptoms "dramatically impact her day-to-day functioning, let alone her parenting." Morrell explained it takes longer for Krysta to understand tasks and new skills and that she would need consistent services. Krysta also was considered high risk for negative childrearing practices.

Ultimately, the juvenile court terminated Krysta's rights as to all six of her children pursuant to § 43-292(1), (2), and (5) through (7) on August 25, 2020.

- 929 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

## 2. Complaint to Intervene

In late April 2019, Larry filed a complaint to intervene in the proceedings pursuant to Neb. Rev. Stat. § 25-328 (Reissue 2016), alleging that he was the grandfather of the children and therefore had a right to intervene. The guardian ad litem for the children filed an answer, denying that Larry was the children's grandfather. A hearing was scheduled for August 12, but on that date, Larry's counsel made an oral motion to continue the hearing, which was granted; the hearing was rescheduled for October 28. On October 28, the parties agreed to set the complaint to intervene for a "status check hearing" on December 17. On that date, the "status check hearing" was held. On February 24, 2020, Larry filed a notice of hearing, scheduling the hearing on the complaint to intervene for March 5. On that date, Larry's counsel agreed to a continuation of the hearing, but asked that it be set prior to the hearing on the motion to terminate Krysta's parental rights. Larry's counsel filed another notice of hearing, rescheduling the matter to April 30. On that date, the court intended to hold a full hearing on the motion to intervene, but ran out of time. Consequently, it scheduled the hearing for May 29.

At the hearing on May 29, 2020, Larry testified that he was residing in Leander, Texas, and had lived there for 12 years. Larry stated on direct examination that he did not have any children but that he had adopted Krysta as his daughter in March 2018. He later said on cross-examination that he adopted Krysta in December 2017. Larry stated that Krysta "had been with [Larry and his wife] since she was 17 and she wanted us to adopt her." A birth certificate for Krysta from North Carolina, which had an issue date of March 15, 2018, was received into evidence. When asked on cross-examination, Larry stated that Krysta's adoption took place in Texas and that Krysta was 31 years old at the time of the adoption. He also acknowledged that the adoption took place after the present case had been filed. And although Krysta had a guardian ad litem in the juvenile case at the time of the adoption, one

- 930 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

was not involved in the adoption proceedings. Larry stated on cross-examination that he knew Krysta's biological mother was alive and had in the past lived with Larry and his wife, Krysta, and the two oldest children.

During the hearing, Larry testified that he considered Krysta's children to be his granddaughters. He claimed to have purchased birthday and Christmas presents for two of the girls; bought them clothes; and paid for a medical appointment for Auburn, beds, and other essential items. On cross-examination, Larry explained that Krysta and the two oldest children lived with him for a period of time, but that they moved out prior to the third child being born. Krysta moved from Texas to Omaha, Nebraska, more than 5 years prior to the hearing. He admitted that he has never seen the youngest three children.

The juvenile court took the matter under advisement and had not yet entered an order when the hearing on the motion for termination of Krysta's parental rights was held in July 2020. On the same day it terminated Krysta's parental rights, the juvenile court entered its order denying Larry's complaint to intervene. The order relied in part upon our prior opinion, *In re Interest of Artamis G. et al.*, 27 Neb. App. 135, 927 N.W.2d 830 (2019), in which we affirmed the juvenile court's denial of a motion to intervene filed by Larry's wife on the basis that she had failed to prove she had lawfully adopted Krysta. Although the court determined that Larry "entered into a form of adoption with Krysta," it denied the motion to intervene, stating:

> Upon reviewing *In re Artamis G*[.], 27 Neb. App. 135 (2019), the Court finds that the same deficiencies in proof that a legal, valid adoption exist [sic]. The evidence established that [Krysta's] biological mother is alive and that her rights were not terminated prior to the adoption, nor did she relinquish her parental rights to Krysta. No evidence exists that Krysta was abandoned by her mother or that her mother was incapable of consenting to an adoption.

The order also explained that "[e]ven if the adoption of Krysta . . . was proper, the parental rights of Krysta . . . have been terminated. The rights of grandparents are extinguished once a termination or relinquishment occurs."

Larry timely appeals, and Krysta cross-appeals.

## III. ASSIGNMENTS OF ERROR

Larry assigns that the juvenile court abused its discretion in denying his complaint to intervene.

Krysta cross-appeals, assigning, restated, that the juvenile court erred in finding the six minor children to be within the meaning of § 43-292(1), (2), and (5) through (7) and that the termination was in the children's best interests.

## IV. STANDARD OF REVIEW

[1,2] Whether a party has the right to intervene in a proceeding is a question of law. *Jeffrey B. v. Amy L.*, 283 Neb. 940, 814 N.W.2d 737 (2012). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court. *Id.*

[3] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *Id.*

## V. ANALYSIS

### 1. Right to Intervene

Larry argues the juvenile court abused its discretion in denying his complaint to intervene. However, whether a party has the right to intervene in a proceeding is a question of law; therefore, we resolve that question independently of the juvenile court's decision. See, *id.*; *In re Interest of Artamis G. et*

- 932 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

*al., supra*. Section 25-328 governs Larry's ability to intervene, and it states:

> Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the State of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before trial commences.

[4,5] Thus, as a prerequisite to intervention under § 25-328, the intervenor must have a direct and legal interest of such character that the intervenor will lose or gain by the direct operation and legal effect of the judgment which may be rendered by the action. *Wayne L. Ryan Revocable Trust v. Ryan*, 297 Neb. 761, 901 N.W.2d 671 (2017). An indirect, remote, or conjectural interest in the result of a suit is not enough to establish intervention as a matter of right. *Id.* Therefore, a person seeking to intervene must allege facts showing that he or she possesses the requisite legal interest in the subject matter of the action. *Id.*

Larry asserts on appeal that he has a direct legal interest in the adjudication proceedings because he stands in loco parentis over the minor children. Additionally, Larry argues that he has a direct legal interest in the adjudication proceedings because he adopted Krysta, thereby holding the same legal rights as if he were Krysta's father. We reject both arguments.

### (a) In Loco Parentis Status

Larry first argues he stands in loco parentis over the minor children; however, he sought to intervene solely upon his status as the children's adoptive grandfather, and this is the basis upon which the court denied his motion. One seeking to

- 933 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

intervene in an action must submit a petition setting forth the facts on which the intervention rests. *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002), *disapproved in part, In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

Furthermore, although Larry's counsel sought to elicit testimony that there was a significant beneficial relationship between Larry and the children, neither testimony offered nor argument made support a determination that Larry was making a claim of in loco parentis status at the hearing. Appellate courts will not consider issues on appeal that were not presented to or passed upon by the trial court. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). Therefore, we do not address Larry's argument that the court erred in denying his complaint to intervene on the basis that he stood in loco parentis over the children.

### (b) Status as Grandfather

[6] Regarding Larry's right to intervene as a grandparent, the Nebraska Supreme Court has held that grandparents have a sufficient legal interest in dependency proceedings involving their biological or adopted minor grandchildren to entitle them to intervene in such proceedings prior to final disposition. See *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998). Larry testified that he and his wife adopted Krysta in Texas in either late 2017 or early 2018, and he offered a North Carolina birth certificate that indicated he was Krysta's father. The juvenile court found that Larry had "entered into a form of adoption with Krysta" in Texas, either in December 2017 or March 2018; however, it also found that there were deficiencies in proof that a valid legal adoption occurred because of the timing and circumstances under which the adoption occurred. Regardless, it held that because it had terminated Krysta's parental rights, any rights Larry would have as a grandfather no longer existed.

- 934 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

(c) Delay in Ruling

Larry argues that the court's delay in ruling upon the complaint to intervene until after the termination hearing violated his due process rights. We disagree.

As set forth above, numerous continuances were granted regarding the hearing on the complaint to intervene, several of which were agreed to or initiated by Larry. During the interim between the filing of the complaint to intervene and the May 29, 2020, hearing, Larry's counsel received notices of hearings and participated in them. We note counsel attended the January 31 "status check hearing" on the motion for termination of parental rights and participated in the February 5 placement hearing. The court allowed counsel to participate in mediation. She also attended the March 5 hearing in which the court addressed permanency planning, a motion to continue hearings on the termination of parental rights, and the complaint to intervene. She attended an April 30 hearing in which the court held a review and permanency planning hearing and addressed a motion to continue the complaint to intervene.

Following the May 29, 2020, hearing, Larry's counsel continued to receive copies of pleadings, including an amended motion for termination of parental rights and witness lists. She filed motions jointly with Krysta's counsel for appointment of counsel for Auburn and for an in camera interview with Auburn. Moreover, she was present at the July 10, 14, and 15 hearings on the motion to terminate Krysta's parental rights. She actively participated during the July 10 hearing regarding a complaint filed against the guardian ad litem for Auburn. At the beginning of the termination hearing, she sought permission to "[c]ome and go" as she pleased. The court stated that it did "not have a problem with" her coming into the hearing, recognizing that it had not yet ruled on the motion to intervene. Counsel made no motion to continue the termination hearing until a ruling on the complaint to intervene was entered. Furthermore, she objected during Wellman's testimony on the first day of the termination hearing and also during Larry's

- 935 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

testimony on the second day of the hearing. She was still present on the last day of the hearing.

Exercising their right of intervention simply enables those grandparents wanting to keep abreast of dependency proceedings to receive notice and have an opportunity to be heard with respect to actions taken by a juvenile court which could significantly affect their relationship with their grandchildren. *In re Interest of Kayle C. & Kylee C.*, 253 Neb. 685, 574 N.W.2d 473 (1998). Given the facts of this case, and the continued involvement of Larry's counsel pending the issuance of a ruling on the complaint to intervene, we cannot say that the juvenile court violated Larry's due process rights by failing to rule on the complaint to intervene sooner. And as correctly noted by the juvenile court, once Krysta's parental rights were terminated, Larry had no continuing rights as a grandfather. See *id.*

Having found no error in the timeliness of the court's order, we need not address the validity of Larry's purported adoption of Krysta. We affirm the juvenile court's order denying the complaint to intervene.

## 2. Termination of Parental Rights

[7] Krysta asserts on cross-appeal that the juvenile court erred in terminating her parental rights under § 43-292(1), (2), and (5) through (7). For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interest. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). The State must prove these facts by clear and convincing evidence. *Id.*

### (a) Statutory Grounds for Termination

Krysta argues there was insufficient evidence to terminate her parental rights under § 43-292(1), (2), and (5) through (7). The juvenile court found the State had presented clear and

- 936 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

convincing evidence to satisfy all five sections. Upon our de novo review, we affirm the decision of the juvenile court; specifically, we find the evidence clearly and convincingly established the children were in out-of-home placements for at least 15 of the most recent 22 months, as required by § 43-292(7).

Section 43-292(7) grants termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." It operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Kenna S.*, 17 Neb. App. 544, 766 N.W.2d 424 (2009). In a case of termination of parental rights based on § 43-292(7), the protection afforded the rights of the parent comes in the best interests step of the analysis. *In re Interest of Kenna S., supra.*

In this case, the record contains undisputed evidence that all six children were removed from Krysta's care in February 2017 and that they each resided in an out-of-home placement throughout the entire proceedings. As a result, at the time of the State's filing its amended motion to terminate Krysta's parental rights in July 2020, the children had each been out of Krysta's care for over 36 months. Therefore, the circumstances required by § 43-292(7) were met, as the State's evidence proved the children had been in an out-of-home placement for at least 15 of the most recent 22 months.

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Becka P. et al., supra.* Because the State presented clear and convincing evidence that each of the children had been in an out-of-home placement for 15 or more of the most recent 22 months, statutory grounds for termination of Krysta's parental rights exist.

- 937 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

### (b) Best Interests

[8,9] Krysta assigns that the juvenile court erred in finding that it was in the children's best interests to terminate her parental rights. In addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Becka P. et al., supra.* See *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to the child's well-being. *Id.*

[10] The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts. *Id.* In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

[11] In cases where termination of parental rights is based solely on § 43-292(7), the Supreme Court has held that appellate courts must be particularly diligent in their de novo review of whether termination of parental rights is, in fact, in the child's best interests. See *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). In such a situation,

- 938 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

because the statutory ground for termination does not require proof of such matters as abandonment, neglect, unfitness, or abuse, as the other statutory grounds do, proof that termination of parental rights is in the best interests of the child will require clear and convincing evidence of circumstances as compelling and pertinent to a child's best interests as those enumerated in the other subsections of § 43-292. *In re Interest of Aaron D., supra.*

In February 2017, law enforcement received a report of neglect and the unsanitary conditions of the home in which the children resided. Throughout the pendency of this case, lasting over 3 years, Krysta received numerous services from the Department of Health and Human Services in an effort to reunify Krysta with her six children. There were periods when Krysta kept her residence in better living conditions and was able to have visits with her children in her home. However, her visits were suspended multiple times for inappropriate behaviors, including threatening to "blow up" her children's therapist's office and grabbing a knife out of anger. Additionally, there was minimal change in Krysta's attitude toward reunification, as she tested positive for marijuana 14 times while on probation.

Four of Krysta's six children entered the foster care system requiring therapy for the trauma they endured while in Krysta's care. The eldest child struggled with her mental health and her ability to navigate the foster care system throughout the pendency of this case; however, the three children next in age all saw dramatic improvements in their coping skills while in the foster care system and attending therapy sessions. Multiple therapists and Department of Health and Human Services' officials who were questioned during the termination hearing stated they believed it was in the children's best interests not to reunify with Krysta.

[12] Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of parental rights. *In re*

- 939 -

Nebraska Court of Appeals Advance Sheets
29 Nebraska Appellate Reports
IN RE INTEREST OF ARTAMIS G. ET AL.
Cite as 29 Neb. App. 922

*Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). The evidence presented indicates that Krysta has not made any lasting changes to her behavior and that based on her diagnosis of bipolar disorder, her refusal to take her prescribed medications, and her repeated marijuana use, she is unlikely to do so. Krysta has not shown any improvements in her parenting ability throughout the time her children have been in foster care, despite the provisions and support provided for her through the case plan goals.

[13] Furthermore, the Supreme Court has previously recognized that children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity. *Id.* The six children have been in foster care since February 2017. Because they deserve stability and should not be required to await Krysta's rehabilitation when she is unable or unwilling to do so, we find termination of Krysta's parental rights to be in the children's best interests, as proved by the State through clear and convincing evidence.

## VI. CONCLUSION

For the aforementioned reasons, we conclude that the juvenile court did not err in denying Larry's complaint to intervene or in terminating Krysta's parental rights to her six children.

Affirmed.